**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| ANGEL V. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:15-cv-2789-DCN |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's (the "Commissioner") decision denying plaintiff Angel V. Jackson's ("Jackson") claims for disability insurance benefits ("DIB") and supplemental security income benefits ("SSIB"). Jackson filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND[1]

### A.  Procedural History

Jackson filed applications for DIB and SSIB on May 15, 2006, alleging disability beginning April 1, 2006. The Social Security Administration denied Jackson's applications on April 21, 2009, and no further action was taken. Plaintiff filed a second DIB application on October 22, 2009, again alleging disability beginning April 1, 2006. This second claim was denied initially and on

---

[1] Unless otherwise noted, the following background is drawn from the R&R.

1

reconsideration. Jackson requested a hearing before an administrative law judge ("ALJ"), but later withdrew that request, at which point Jackson's second claim was dismissed.

Jackson filed the instant applications for DIB and SSIB on July 20, 2011, alleging disability beginning on June 20, 2011. The Social Security Administration denied the claims initially and on reconsideration. Jackson requested a hearing before an ALJ and ALJ Gregory M. Wilson held a hearing on August 27, 2013. The ALJ issued a decision on February 14, 2014, finding that Jackson was not disabled under the Social Security Act. Jackson requested Appeals Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On July 15, 2015, Jackson filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on July 29, 2016, recommending that this court affirm the ALJ's decision. Jackson filed objections to the R&R on August 16, 2016, and the Commissioner responded to Jackson's objections on September 1, 2016. The matter is now ripe for the court's review.

**B.     Medical History**

Because Jackson's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Jackson was born on June 28, 1964 and was 46 years old at the time of her alleged disability onset date. She communicates in English and has at least a high school education.

### C. ALJ's Decision

The ALJ employed the statutorily required five-step sequential evaluation process to determine if Jackson was disabled between June 20, 2011, and August 27, 2013, the date of the hearing. The ALJ first determined that Jackson had not engaged in substantial gainful activity during the relevant time period. Tr. 20. At step two, the ALJ found that Jackson suffered from the following severe impairments: headaches, a thyroid disorder, osteoarthritis, chronic obstructive pulmonary disease, and obesity. Id. At step three, the ALJ determined that Jackson's impairments did not meet or equal one of the listed impairments in the Agency's Listing of Impairments ("the Listings"). Tr. 21; see 20 C.F.R. § 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined that Jackson had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. § 404.1567(b), with certain restrictions. Tr. 24. More specifically, the ALJ determined that Jackson could never climb ropes, ladders, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. Id. The ALJ further determined that Jackson had to avoid concentrated exposure to hazards and fumes, and due to visual disturbance, she could not drive or handle small objects such as a needle. Id. At step four, the ALJ found that Jackson was unable to perform her past relevant work as a nursery school attendant or day care worker. Id. at 32. Nevertheless, the ALJ found that given Jackson's age, education, work experience, and RFC, she was capable of performing other work that exists in significant numbers in the national economy. Id. at 33–34. Therefore, the ALJ concluded that Jackson was not disabled. Id.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

### III.   DISCUSSION

Jackson objects to the R&R on three grounds, arguing that the magistrate judge erred in failing to find that:  (1) the ALJ improperly relied on selective medical evidence to discount the opinion of Jackson's treating physician, Dr. Carol Kooistra ("Kooistra"); (2) the ALJ improperly ignored relevant caselaw by relying exclusively on the absence of "objective medical evidence" in evaluating the intensity, persistence, and limiting effects of Jackson's symptoms; and (3) Jackson was, at least, entitled to benefits for the closed period from September 2011 to January 2013.  The court will address each objection in turn.

#### A.     Reliance on Selective Evidence

Jackson contends that the ALJ's decision and the magistrate judge's R&R "pick and choose" from the medical evidence to discount Kooistra's opinion that Jackson suffered from disabling headaches for an 18 month period.  Pl.'s Objections 4–5.  Though Jackson's objections fail to highlight the manner in which the ALJ and the magistrate judge failed to properly account for all available evidence, Jackson's initial brief outlines a number of grievances.[2]  Pl.'s Br. 9–18.  Jackson argues the ALJ incorrectly:  (1) determined that her headaches were at their worst when she initially sought treatment in November 2011; (2) determined that Ibuprofen relieved her initial headaches; (3) cited a February 2012 examination with her Ob/Gyn, rather than

---

[2] Jackson's objections fail to specifically indicate whether she believes Kooistra's opinion should be given controlling weight, or simply more than "little weight."  Pl.'s Objections 4–5.  Nevertheless, the court finds the inconsistencies outlined below sufficient to resolve both issues.  See Tate v. Colvin, No. 8:12-cv-3602-DCN, 2014 WL 667837, at *7 (D.S.C. Feb. 20, 2014) ("The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight.").

Kooistra; (4) determined that she had travelled to New York; (5) characterized her "crazy headaches" in July 2012 as a reoccurrence of old symptoms, rather than a progression of continuing symptoms; and (6) considered her improvement to "two headaches per week" not disabling. Id.

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence. 20 C.F.R. § 404.1527(c). Medical opinions are evaluated pursuant to the following non-exclusive list of factors:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). In general, more weight is given to the opinion of a "source who has examined [a claimant] than to the opinion of a source who has not," 20 C.F.R. § 404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. The ALJ must also give specific reasons for the weight given to a treating physician's medical opinion. See SSR 96-2p, 1996 WL 374188 (July 2, 1996).

The ALJ acknowledged that Kooistra provided a headache RFC questionnaire on August 14, 2013, stating that Jackson suffered from daily headaches which would render her temporarily incapable of performing work, requiring her to take breaks for at least an hour per day and to be absent from work at least four days per month. Tr. 841–45. The questionnaire listed the approximate duration of these headaches as 18 months and recognized that the headaches responded well to steroids, but noted that

6

this treatment caused weight gain.  Id. at 842–43.  The ALJ provided a number of reasons for discounting Kooistra's opinion, noting that:[3]  (1) Jackson denied having problems with her headaches in a February 2, 2012, exam; (2) the debilitating nature of headaches, as set forth in the questionnaire, is inconsistent with record evidence that Jackson traveled to a conference out of state and was cleared to travel to New York; (3) between January 2013 and May 2013, Jackson reported improvement in her condition, even after reducing her medication; and (4) when the headaches were first diagnosed they occurred "intermittently" and were relieved by Ibuprofen.  Id. at 32.

     These observations clearly undermined the "consistency of [Kooistra's] opinion with the record."  See Johnson, 434 F.3d at 654.  Of course, Jackson takes issue with the ALJ's characterization of the evidence.  However, as the magistrate judge's ably outlines in the R&R, a review of the record reveals that these alleged discrepancies do not undermine the ALJ's analysis.  R&R at 12–15.  Though Jackson argues that the February 2, 2012, exam was conducted by her Ob/Gyn, not Kooistra, this does not change the fact that Jackson denied suffering from headaches at a time when Kooistra states she was suffering from headaches.  Tr. 680.  The denial itself is what undermines Kooistra's opinion, not the fact that the denial was made to a specific person.  Jackson also insists that she did not travel to New York, but again, this objection is beside the point.  As the R&R explains, "the ALJ relied on the inconsistency between [] Kooistra's opinion that the plaintiff experienced debilitating

---

[3] The magistrate judge noted that Jackson does not appear to take issue with the ALJ's assessment of an earlier opinion provided by Kooistra on November 4, 2011, R&R at 12 n.2, and Jackson has not raised any such argument in her objections.  Pl.'s Objections 4–5.  Therefore, the court does not address the ALJ's reasons for discounting Kooistra's November 4, 2012, opinion.

headaches and Dr. Kooistra's statement regard[ing] [Jackson's] medical 'ability' to travel from South Carolina to New York." R&R at 14. The fact that Jackson did not actually engage in such travel does not resolve the inconsistency between these opinions. Moreover, the ALJ noted that Jackson <u>did</u> travel to Florida to attend a conference, which presents the same problem for Kooistra's opinion. Tr. at 32.

Jackson also takes issue with the ALJ's failure to consider her bi-weekly headaches disabling. However, the point of the ALJ's observation that Jackson reported a reduction in the frequency of her headaches to two per week in January 2013—not to mention further improvement reported in March and May 2013—was that this improvement is inconsistent with Kooistra's assertion that Jackson suffered from debilitating headaches for 18 months. <u>Id.</u> The fact that this improvement continued after Jackson reduced her medication further undermines Kooistra's opinion that these headaches can only be treated with steroids that produce unwanted side-effects. <u>Id.</u>

Certain of Jackson's arguments actually misconstrue the ALJ's analysis. Though Jackson contends that the ALJ characterized her "crazy headaches" in July 2012 as a "reocurrence" of old symptoms, the ALJ actually stated that "on July 9, 2012 [Jackson] reported reoccurrence of 'crazy headaches' since May." <u>Id.</u> at 32. This language appears to fairly reflect Kooistra's own notes that "[Jackson] has begun with crazy headaches" and that such headaches "[have] happened more than once beginning in May." <u>Id.</u> at 668. The ALJ never indicates that Jackson's headaches stopped anytime between their initial diagnosis and July 2012. Thus, the ALJ's use

8

of the word "reoccurrence" is more fairly read to signal the recurrent nature of the "crazy" headaches that began in May, rather than a reemergence of old symptoms.

Finally, Jackson argues that the ALJ improperly assumed that her headaches were "at their worst," "occurred 'intermittently,'" and were "relieved with Ibuprofen" when she initially sought treatment in November 2011. Again, the court finds Jackson's characterization of the ALJ's conclusions somewhat unfair. Jackson is correct that the actual treatment records refer to her episodes of blurred vision, not her headaches, as being "intermittent," but the records also indicate that the headaches occurred alongside the vision problems. See id. at 598 (noting that "[t]here is head pain at the same time [as the blurred vision]" and that "the vision starts before the throbbing headache"). Thus, it is fair to read Kooistra's records to state that the headaches were also intermittent. Similarly, though the medical record does not actually state that the headaches were "relieved" by Ibuprofen, it does state that Jackson used Ibuprofen to treat the headaches. Id. Jackson suggests that if the Ibuprofen had "relieved" her headaches, Kooistra would not have prescribed anything else, Pl.'s Br. 13, but one can just as easily argue that if the Ibuprofen had not provided at least some relief, Jackson would not have used it.

Still, the ALJ was wrong to characterize Jackson's headaches as being "at their worst" in November 2011. Tr. 32. The evidence seems to suggest that Jackson's headache symptoms grew into the "crazy" headaches she reported in July 2012, and later subsided in January 2013. Tr. 598, 668, 691. But a single mischaracterization does not undo the ALJ's overall conclusion, or his decision to give Kooistra's testimony "little weight." See Chaney v. Colvin, 2014 WL 4209670,

9

at *3 (W.D. Ark. Aug. 25, 2014), aff'd, 812 F.3d 672 (8th Cir. 2016) (determining that ALJ made "some mistakes in his recitation of the facts," but that such errors did not warrant remand because "it is clear that there was substantial evidence to support the ALJ's credibility determination in this case."); Hunter v. Comm'r of Soc. Sec., 2013 WL 4496249, at *5 (E.D. Mich. Aug. 21, 2013) (holding that ALJ's assessment of claimant's mental health treatment in determining her credibility was not "rendered erroneous by his mistaken inference" that her doctor's decision to stop prescribing Zoloft meant that she was taken off medication entirely). This court's task is simply to determine whether the ALJ's decision was supported by substantial evidence. Jackson, 368 F. Supp. 2d at 508 (D.S.C. 2005) ("[J]udicial review ... of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." (second alteration in original) (quoting Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002))).

The numerous inconsistencies outlined above all undermine Kooistra's opinion and indicate that Jackson's headaches were never as debilitating as Kooistra suggests. These inconsistencies provide more than enough evidentiary support to affirm the ALJ's decision to discount Kooistra's opinion.

### B.    Discounting Jackson's Testimony

Jackson next argues that the magistrate judge ignored relevant caselaw and failed to recognize that the ALJ erroneously relied on the absence of "objective medical evidence" to discount Jackson's testimony regarding the intensity, persistence, and limiting effects of Jackson's symptoms. Pl.'s Objections 5–9. The

Commissioner argues that such caselaw is inapplicable because the ALJ did not rely <u>exclusively</u> on the absence of objective medical evidence in assessing Jackson's credibility.  Def.'s Reply 4.

The ALJ is entitled to evaluate a claimant's subjective testimony in assessing the effects of the claimant's symptoms.  <u>Craig</u>, 76 F.3d at 591.  Such an evaluation requires a two-step inquiry:  (1) the ALJ must find that the claimant suffers from a "medically determinable" impairment that could reasonably be expected to produce the alleged symptoms, and (2) the ALJ must then evaluate all available evidence in assessing the intensity and persistence of the claimant's symptoms.  20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; <u>see</u> <u>also</u> <u>Fisher</u>, 181 F. App'x at 363 ("First, the ALJ must determine whether medically determinable mental or physical impairments can produce the symptoms alleged.  Second, the ALJ must evaluate the claimant's testimony about his subjective experiences.").

Jackson relies on caselaw specifically addressing claimants' subjective claims of migraine headache symptoms to argue that such claims cannot be discounted purely because they lack corroborating "objective medical evidence."  Pl.'s Objections 7–8.  Indeed, a number of courts in this circuit and elsewhere have held that a claimant's subjective testimony of migraine headaches cannot be set aside simply because they are not substantiated by neurological evidence.  <u>Strickland v. Barnhart</u>, 107 F. App'x 685, 689 (7th Cir. 2004); <u>Taylor v. Astrue</u>, 2011 WL 2669290, at *3 (E.D.N.C. July 7, 2011); <u>Sidbury v. Astrue</u>, 2009 WL 3029741, at *6 (E.D.N.C. Sept. 22, 2009); <u>see</u> <u>also</u> <u>Parsley v. Astrue</u>, 2009 WL 1940365, at *4 (W.D. Pa. July 2, 2009) (recognizing that "the pain associated with migraine headaches and

the resultant difficulties of daily living alleged in Plaintiff's testimony are difficult to establish by way of medical findings."). This is because "migraines are incapable of diagnosis through laboratory or diagnostic testing." Taylor, 2011 WL 2669290, at *3 (E.D.N.C. July 7, 2011).

However, the court need not explore the particular parameters of this rule because it does not apply in this case. First, it is not entirely clear that Jackson testified to "migraine headaches" at all. Tr. 81–82. Jackson simply testified to "headaches." Id. Because there was no specification that her headaches were migraine headaches, it was appropriate for the ALJ to look to Jackson's neurological exam results to at least assess whether the medical evidence indicated her headaches might be connected to some other diagnosable neurological condition. More importantly, the ALJ did not rely exclusively on a lack of "objective medical evidence" in concluding that Jackson's testimony was not entirely credible. Tr. 25. The ALJ primarily relied on Jackson's own statements during her visits with Kooistra in January, March, and May of 2013, when she reported that her headaches had decreased in frequency and severity, even after reducing her medication. Tr. at 28–29. Jackson reported a single headache between January and March and indicated that she was "overall doing well" in May. Id. The ALJ also noted inconsistencies between Jackson's testimony and her report to Kooistra in December 2012—before the headaches began to subside—that the headaches occurred every morning and lasted for about 30 minutes to an hour, id. 29, and Kooistra's determination in July 2012—when Jackson was experiencing "crazy headaches"—that she was able to travel to New York. Id. at 27. All of these inconsistencies undermine Jackson's

12

testimony and were therefore a proper basis for concluding such testimony was "not entirely credible." Id. at 25.

Finally, the court notes that the ALJ did not simply ignore other evidence in the record that supported Jackson's testimony. As discussed above, the court also assessed Dr. Kooistra's opinion and medical records, id. at 31–32, and accounted for Jackson's activities of daily living[4] in determining her RFC. Id. at 28–29. Because the ALJ considered such evidence, and did not rely exclusively on the absence of objective medical evidence in assessing Jackson's testimony, the court finds no error in the ALJ's analysis.

### C.   Closed Period Benefits from September 2011 to January 2013

Jackson also argues that, even under the ALJ's analysis, she was at least entitled to a closed period of benefits for the period beginning in September 2011, when she first experienced the headaches, and ending in January 2013, when her headaches began to respond to medication. Pl.'s Objections 3–4. Jackson presents this argument by observing that "[b]oth the [R&R] and the ALJ appear to forget that Jackson only need be disabled for twelve months to be entitled to disability benefits." Id. at 3.

The court suspects that the ALJ and magistrate did not forget that a disabling impairment must last 12 months to qualify for benefits, 20 C.F.R. § 404.1509, but simply remembered that not every impairment is disabling. See 20 C.F.R. § 404.1525

---

[4] This court also agrees with the magistrate judge that Jackson's activities of daily living, which included independently caring for herself, cleaning her home, preparing simple meals, caring for her parents, attending church, and visiting relatives, also undermine Jackson's testimony regarding the severity of her headache symptoms. R&R at 22–23; see also Tr. at 28–29.

(explaining the Listings, which identify impairments that are considered "severe enough to prevent an individual from doing any gainful activity"); 20 C.F.R. § 404.1526 (outlining criteria for determining when non-listed impairments are medically equivalent to impairment on the Listing of Impairments); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983) ("The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work. . . . If a claimant suffers from a less severe impairment, the Secretary must determine whether the claimant retains the ability to perform either his former work or some less demanding employment.").

The ALJ certainly did not find that Jackson's headaches were disabling at any point between September 2011 and January 2013, and Jackson provides no explanation for why the ALJ should have do so. Pl.'s Objections at 3–4. In any event, there was ample evidence in the record to support the ALJ's conclusion that Jackson was not under a disability from June 20, 2011, to February 14, 2014.[5]

---

[5] The court adopts the following language from a decision addressing a similar argument in the Western District of North Carolina:

> To the extent Plaintiff is claiming that the ALJ erred in failing to explicitly deny a closed period of disability, that argument also fails. The ALJ found that Plaintiff was not disabled at any time from his alleged onset date [], through the date of his decision. Implicit in this finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time.

Atwood v. Astrue, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011), report and recommendation adopted, 2012 WL 1858764 (W.D.N.C. May 22, 2012); see also Butterworth v. Colvin, 2015 WL 1407553, at *5 (W.D. Va. Mar. 25, 2015) ("The ALJ's opinion, while not specifically discussing a closed period, clearly reflects that the ALJ considered whether Butterworth's impairments, alone or in combination, ever rendered him unable to perform substantial gainful activity for a period of twelve months or greater.").

"An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied." Miller v. Colvin, No. 4:13-CV-0914 DCN, 2014 WL 2112696, at *3 (D.S.C. May 20, 2014). As discussed above, the ALJ noted a number of inconsistencies in Jackson's treatment records suggesting that her headaches never reached a disabling level. See Tr. at 32 (noting that in November 2011, Jackson's headaches were intermittent, in February 2012, she denied problems with headaches, and in July 2012, she was cleared to travel to New York). In addition to this evidence that the headaches were never a disabling impairment, there is also evidence that the intensity and frequency of Jackson's headaches changed during the relevant period. Jackson herself argued that her headaches progressively worsened from November 2011 until May 2012, when she began experiencing the "crazy headaches." Pl.'s Br. 14–15. Thus, even if Jackson's headaches did reach a disabling level at some point, there is no evidence that this disabling level persisted for over a year. The record indicates that the headaches progressed in May 2012 and then receded in January 2013. Tr. 598, 668, 691. Such changes suggest that Jackson's headaches were not disabling for the entire period between September 2011 and January 2013. In light of such evidence, the court finds that the ALJ's decision was supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 26, 2016**
**Charleston, South Carolina**